# SALVATORE LIGA & COMPANY, PLLC

777 Westchester Avenue, Suite 101
White Plains, New York 10604
(877) 725-5442
(917) 591-8818 Fax

March 28, 2017

**Via ECF & Electronic Mail**
Hon. Katherine Polk Failla, U.S.D.J.
United States District Court, S.D.N.Y.
40 Foley Square, Room 2103
New York, New York 10007
E: Failla_NYSDChambers@nysd.uscourts.gov

        Re: *Orue et al v. Artisanal Fromagerie & Bistro LLC, etal.*
           *Civil Action No: 15 Civ 5727 (KPF)*

Dear Judge Failla:

  I just read Mr. Schaffer's letter attacking my intergrity and honesty.

  Said allegations are unjustified, improper and baseless.

  I have absolutely no reason, whatsoever, to lie or to mislead the Court in any way. There is nothing in it for me. If my client knowingly or intentionally lied, he should be punished. I don't advocacate bad behavior, nor can I justify it. If my client was involved in some type of fraudulent transfer scheme, assets should be seized and he should be punished.

  I first learned about this case a little over a month ago. It was the very same day, I called your Chambers and requested an adjournmnet which resulted in the hearing I attended. For the record, I made that phone call and agreed to attend the hearing at the request of Stephanie Schulman.

  It was my understanding that the whole purpose of said hearing was to determine if and when Mr. Drory intended to tender payment pursuant to the settlement agreement. I was not there to re-litigate the case, to cast dispursions on anyone. or to make excuses for my client's past behavior. From my perspective, this is a straight-forward collectiuon matter.

  I told the Court at the outset of my statements that my practice focuses on bankrupty and collection work. I also disclosed to the Court that I had not been provided any copies of documentation to review in preparation for the hearing, I did not have any first-hand knowledge of the negotiations which resulted in the settlement and I certainly did compile or review the parties' financials, contracts, tax returns and history of litigation.

I was there to convey the following on behalf of my clients:

a. The settlement was based upon the maximum coverage of an insurance policy my clients' allege they had;
b. The insurance compamy has refused to pay the settlement;
c. Mr. Drory is insolvent;
d. Stephanie Schulman is the sole owner of the new location, despite Mr. Schafdfer's suspicions to the contrary.

Prior to said hearing, I asked Ms. Schulman and Mr. Drory to provide me a copy of the insurance policy, as well as, any correspondence from said insurance company. They provided me with nothing. As of today, I have not received any documentation whatsoever. Frankly, I am somewhat annoyed by it. Had I known, my clients would be this difficult I propably would not have agreed to represent them.

***When the Court asked me for a solution, I suggested that Mr. Schaffer examine Mr. Drory's finances in the same manner that a bankruptcy trustee would. It was my idea and it was a very reasonable and fair way to address the collection matter.***

Prior to the last hearing, there was no reason for me to dive into the financials, including those for the new location for the simple reason – my clients had filed bankruptcy and were using a different attorney for that purpose. It's reasonable to assume that their bankruptcy counsel would have already done so and would have the needed documentation. *As of today, I am not certain how much work was actually done in preparing for the bankruptcy matter or that the bankruptcy lawyer has much information.* When I spoke to Mitch Greene on Friday, March 23, 2017, he stated that it was "his understanding" that Stephanie Schulman was the owner of the lease and "the story" he has is that Stephanie Schulman purchased Sarid Drory's interest a month after the lease was signed. Admittedly, that was a very weak answer but, it was consistent with what my clients disclosed to me.

At the hearing, I told the Court that it was represented to me that Sarid Drory did not sign th lease. I believe, I also told the Court that I never saw the lease and my statements were based solely on my conversations with the client in and out of the courtroom. ***If that is not true, I stand corrected. Again, I never saw the lease.***

Frankly, I do not think it is constructive or in any way useful to spend time sifting through my clients past statements in unrelated litigation trying to catch him in a lie. No one has ever denied that Mr. Drory was originally intended to be a partner in the new location which was based on his ideas and on his old restaurant. As I stated to the Court, he was and continues to be the creative force behind the new venture. It has also been disclosed that Stephanie Schulman invested in the new restaurant venture and lent Mr. Drory money. The simple fact is at some point Ms. Schulman's head caught up to her heart and she demanded to take title to various properties in consideration for the very substantial sums of money she shelled out to support her boyfriend's business. **THAT IS NOT UNREASONABLE OR HARD TO IMAGINE.** It is also not unusual or hard to imagine that she pays all of the household expenses and supports Mr. Drory who lives with her, especially after the old restaurant close. Therefore, is it a big strench to believe that Mr. Drory has continued to oversee the construction of the new restaurant which he started and is now owned by his girlfriend, while she is out practicing law and supporting him. ***I can understand Mr. Schaffer's frustration – he spent a lot of time and effort to litigate and to settle a case, and has yet to see a dime. If I were him, I would be very upset. However that does not give him the***

*right to call people liars or to call me a liar. Whether he realizes it or not, my job is to get him paid or at least to set his mind at ease as to why not. I am sure his clients would also like to know what is going on.*

I contend that the new restaurant venture is essentially a family business being owned and operated by a boyfriend and girlfriend. Mr. Drory is the artist, Ms. Schulman is the banker. Mr. Drory is the worker, Ms. Schulman is the owner. There is nothing usual or uncommon about these types of arrangments. It is what it is.

That said, the law is the law. I understand someone should not refer to themselves as a "partner" in a court proceeding if they are not. However, you need to put substance over form. Was Mr. Drory's ownership status or business title an operative fact in those instances? Was it material to the outcome of those cases?, Maybe,or maybe not. Was justice served in those cases? Did the parties resolve their dispute? I am not trying to justy "bad" behavior but, in every day life people associated with closely held entities speak that way.

I appreciate the fact that it is Mr. Schaffer's position that Mr. Drory represented to him that he was capable of paying the agreed upon settlement. And, for that reason he now wants to call him a liar and have him punished for making misleading statements.

*I HAVE A FEW QUESTIONS:*

1. *Would Mr .Schaffer's clients have been entitled to a judgment, even if Mr. Drory's business was failing?*

2. *Would such a judgment be larger or smaller than the settled upon amount?*

3. *Why did Mr Schaffer settle?*

4. *How did he reach that settlement amount?*

5. *If the settlement is less than what a judgment would have been, what documentation did Mr. Drory and his lawyer provide to Mr. Schaffer to induce him to accept the lesser amount?*

6. *Has the settlment been reduced to a judgment? If not, why not?*

7. *Is a judgment in these types of cases, dischargable pursuant to a bankruptcy?*

I don't think it is unreasonable for Mr. Schaffer to answer these questions, especially since he has chosen to accuse my clients of misleading him during the settlement negotiations. Because, if my clients did not mislead him -- our collective focus should be looking at the here and now.

*I agree that my clients MUST produce documents to determine Mr. Drory's net worth, and to satisfy questions that creditors, such as Mr. Schaffer, would reasonable have concerning his past business dealings.*

*I also think at this point the Court shoud give my clients a drop dead date to produce documentation or face sever penalties. What is right, is right.*

*In my opinion, Stephane Schulman needs to participate in this process in some way because of her nexus to Mr. Drory. She has first-hand knowledge, and she is the best suited to explain what took place and when.*

I realize this may be odd coming from the Defendant's lawyer but, I truly believe the truth will set him free. *<u>I personally believe Mr. Dory is broke.</u>* His old restaurant was not doing well. A collection company I work with had multiple vendor claims against the restaurant. If you recall, I stated in court I met Mr. Drory for the first time about six months ago. The collection company recommended me to him to help him settle his debts. At the time, the *problem du jour* was that restaurant's bank accounts and merchant accounts were frozen as a result of a default in repaying a *merchant cash advance*. Such funding companies are lenders of last resort. They are factors that purchase future credit card sales in exchange for an "advance". A typical deal would be something like $100,000 advance in exchange for paying back $135,000 over 5 months. *That's over 70% interest.* Only desperate people borrow money like that.

The first bankruptcy was no surprise to me.

While I did not know about second bankruptcy until reading Mr. Schaffer's letter, the second bankruptcy did not surprise me either. Mr. Drory showed me the architectural drawings -- it's a very ambitious and very expensive project. As I told the Court, I know they were trying to raise money. I had introduced them to a client for tht purpose. He declined. They have been having problems with the landlord.

As someone who collects money for a living – may instincts are good about these things.

*I spoke with Jason Bertolli, yesterday, with regards to holding a hearing next week.* I am available on the dates the Court has suggested  Mr. Drory has also confirmed he is available. However, I have not heard from Stephanie Schulman. She is still in Utah. I texted her several times yesterday. *<u>In my opinion, Stephanie Schulman's active participation, either in person or telephonically, is extremely important.. If she does not participate, I am not sure how productive the hearing will be.</u>*

Very truly yours,

SALVATORE J. LIGA, ESQ.