# SALVATORE LIGA & COMPANY, PLLC

777 Westchester Avenue, Suite 101
White Plains, New York 10604
(877) 725-5442
(917) 591-8818 Fax

April 5, 2017

**Via ECF & Electronic Mail**
Hon. Katherine Polk Failla, U.S.D.J.
United States District Court, S.D.N.Y.
40 Foley Square, Room 2103
New York, New York 10007
E: Failla_NYSDChambers@nysd.uscourts.gov

      Re:    *Orue et al v. Artisanal Fromagerie & Bistro LLC, etal.*
               *Civil Action No: 15 Civ 5727 (KPF)*

Dear Judge Failla:

    I am in receipt of your order to appear on April 25th. Within an hour of receiving it, I forwarded a copy to Ms. Schulman as the Court instructed. Ms. Schulman confirmed receipt of the same and indicated to me that she would be attending the hearing as ordered by the Court. I also spoke with Mr. Drory, as well. .

    The Court should know that after speaking with Mr. Drory at length on the evening of Saturday, April 1, 2017, I began receiving documentation from my client.

    Among the items recently provided to me, include:

1. A copy of an IRS tax lien dated, 09/16/2016 for $254,228.03;
2. A letter from Citibank, dated 01/27/2016 (over a year ago) informing Mr. Drory that his bank accounts were seized and attached to said letter is a copy of a NYS Tax lien for $826,892.59;
3. A letter demanding the payment of child support from NYS, dated 01/27/2017. Said letter shows an arrears owed of $136,033.70;
4. A portion of the contract from when Mr. Drory purchased the old restaurant detailing very large amounts of debt he was to assume as part of the purchase;
5. A copy of the *Employment Practices Liability Insurance Policy*, showing it was in effect from 12/09/2014 to 12/09/2015.
6. A letter dated April 4, 2017, from Mr. Drory's CPA which states that Mr. Drory assumed $1.5M in debt when he purchased the old location, Mr. Drory is liable for approximately $2.8M in taxes, and $139,600.60 in child support arrears.

I also await a letter from the insurance agent to support the fact that M. Drory had insurance in effect at the time of the Plaintiff's lawsuit which was believed to cover a lawsuit such as that of the Plaintiffs'.

**That being said, Stephanie Schulman is very upset.** *<u>Plaintiff's attorney has subpoenaed the landlord of the new location with a deadline of April 5, 2017 (Today).</u>* . She contends that she has absolutely nothing to do with lawsuit before this Court and certainly her landlord has nothing to do with this lawsuit. She believes the attorney's continued unbridled actions amount to harassment and abuse of process, among other things. *<u>Furthermore, said subpoena is doing irreparable harm to her relationship with the landlord and to the venture as a whole for which she will hold Plaintiff's attorney. It is costing her money and time and has asked me to ask the Court to order Mr. Schaffer to cease the fishing expedition immediately.</u>*

Ms. Schulman contends that the lease is nothing but a liability that is straining her financially. And, that the holding company which owns the lease is a "shell" and holds no assets. She further confirmed that approximately a month after the lease was originally signed, Mr. Drory transferred his interest in the same to her in exchange for the large sums of money she had invested; The lease as negotiated specifically permits transfers between them without restriction and without being deemed an assignment

Ms. Schulman has also explained to me that Mr. Drory has a hard time reading English and that in no way would he have been able to read and understand the complexity of such a legal settlement agreement. In her opinion, Mr. Drory's attorney did a poor job of explaining the settlement and that Mr. Drory did not even understand that he had personal liability at the time of the settlement. She tells me that she had no role in the negotiations and that she saw the agreement for the first time after Mr. Drory brought it home and left it on a counter.

Very truly yours,

SALVATORE J. LIGA, ESQ.